**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CHAD WILLIAM REED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-673-J** |
| | ) | |
| **STEVEN HARPE, Director of Oklahoma Department of Corrections,[1] et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>REPORT AND RECOMMENDATION</u>**

Before the Court is Defendants' Motion to Dismiss.[2] Doc. 30. Plaintiff Chad William Reed, a state prisoner proceeding pro se, filed a verified amended complaint alleging that when prison officials failed to serve him with kosher meals during the Jewish holiday of Passover in 2024 and 2025, they violated his state and federal constitutional rights and the Oklahoma Religious Freedom Act (ORFA). Doc. 17. United States District Judge Bernard M. Jones, II referred this matter to the undersigned Magistrate Judge for initial

---

[1] As noted *infra*, Plaintiff sues all defendants in their individual capacities. Defendants Steven Harpe and Jennifer Scoggins are no longer employed by the Oklahoma Department of Corrections (ODOC). Doc. 23, at 2.

[2] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 5. Upon review, the undersigned recommends the Court convert the motion to a motion for summary judgment and grant it in part for failure to exhaust remedies and in part for failure to state a claim, and decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

## I. Factual background and Plaintiff's claims.

Plaintiff "has been on the Kosher religious diet . . . since 2013, so that he could practice his sincer[e]ly held religious beliefs of Judaism." Doc. 17, at 3. In 2023, Plaintiff filed a lawsuit against the ODOC "along with other Defendants" for providing him with peanut butter ("which are legumes that may not be eaten during Passover")[3] and for providing foods that were "not Kosher for Passover and did not have the appropriate Kosher for Passover certifying symbol." *Id.* at 4-6. That lawsuit remains pending. Doc. 34, at 3; *see Reed v. Lindsey*, No. CIV-23-1011-J (W.D. Okla.). The allegations of Plaintiff's amended complaint arose at the Lexington Assessment and Reception Center (LARC), where he is currently incarcerated. Doc. 17, at 1.

---

[3] Plaintiff contends that inclusion of peanut butter in his meal bag during Passover "defil[es] the complete Passover . . . meal." Doc. 17, at 6; *see also id.* at 9 ("Corn and peanuts are considered chometz and [cannot] even be in your possession during Passover, [l]et alone be eaten.").

The "2024 Passover . . . began on April 22, 2024, and ended on April 30, 2024[.]" Doc. 17, at 5. Defendants Steven Harpe, the former ODOC Director, "and [ODOC] agency chaplain Leo Brown tasked [defendant] Tanya Parker to correct the 2024 Passover" menu plan. *Id.* at 6 (footnote omitted). Defendant Parker "is not a registered dietician, nor is she a Kashruth Rabbi[.]" *Id.* Although Parker made some changes to the 2024 Passover menu plan, prison staff continued to offer Plaintiff peanut butter and foods that "didn't have the appropriate Kosher for Passover certification symbol." *Id.* at 6-7; *see id.* Ex. 2 (2024 Passover menu approved by Defendant Parker). Plaintiff contends that, in failing to ensure that Plaintiff's 2024 Passover menu plan complied with his religious beliefs, Harpe and Brown "discriminate[d] against Plaintiff's religion of Judaism because they only promote Christianity" and violated his "right to a diet that conforms to his sincer[e]ly held religious beliefs[]" under the First Amendment, the Oklahoma Constitution, and ORFA. Doc. 17, at 7-8.

Plaintiff alleges that his 2025 Passover menu plan "again . . . [included] foods which were not Kosher for Passover[,]" including peanut butter. Doc. 17, at 8-9. In addition to Harpe and Brown, Plaintiff names Defendant Scoggins in connection with this claim, because she developed the 2025 Passover menu, and Harpe and Brown "approved of the 2025 Passover menu at the Agency

meeting[.]" *Id.* Plaintiff again contends that these defendants discriminated against him based on his religion and violated his rights under the First Amendment, the Oklahoma Constitution, and ORFA. *Id.* at 9-10.

Plaintiff sues all defendants in their individual capacities and seeks compensatory, nominal, and punitive damages; a declaratory judgment; and court costs. Doc. 17, at 2, 11-12.

The ODOC has filed the Court-ordered Special Report. Doc. 29. Before the Court is Defendants' motion to dismiss the amended complaint. Doc. 30. Plaintiff responded in opposition to the motion and signed his response under penalty of perjury. Doc. 34.

## II. Standard of Review.

### A. Summary judgment.

Defendants argue that Plaintiff failed to exhaust administrative remedies and rely on documents outside the amended complaint to support the motion to dismiss. So the Court should analyze Defendants' motion under Fed. R. Civ. P. 56.[4] The Court should grant summary judgment "if [Defendants]

---

[4] In its order directing prison officials at LARC to prepare and file a Special Report, the Court notified the parties that if Defendants filed a motion and relied on materials not included with the amended complaint, the Court would convert the motion to dismiss into a motion for summary judgment. *See* Doc. 18, at 2. Plaintiff "was [thus] on notice that, procedurally, he had to defend

show[] that there is no genuine dispute as to any material fact and [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering Defendants' motion, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to" Plaintiff. *Burke v. Utah Transit Auth.*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quoting *Schutz v. Thorne*, 415 F.3d 1128, 1131 (10th Cir. 2005)).

"Failure to exhaust under the [Prison Litigation Reform Act (PLRA)] is an affirmative defense." *Estrada v. Smart*, 107 F.4th 1254, 1261 (10th Cir. 2024) (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)). "When a defendant moves for summary judgment based on an affirmative defense, Rule 56 puts the burden on the defendant to 'demonstrate that no disputed material fact exists regarding the affirmative defense asserted.'" *Id.* at 1261 (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997)). Once the

---

against summary judgment" and, so, the Court may convert it. *See Whitmore v. Hill*, 456 F. App'x 735, 737 (10th Cir. 2012) (upholding the district court's conversion of the defendants' motion to dismiss into a summary judgment motion after finding the pro se prisoner "was on notice that, procedurally, he had to defend against summary judgment"); *see also Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 859 n.2 (10th Cir. 1996) ("Notice to the parties is required to prevent unfair surprise when a judge converts a 12(b)(6) motion into a Rule 56 motion.").

defendant meets this initial burden, the plaintiff "must then demonstrate with specificity the existence of a disputed material fact." *Id.*

A dispute is "genuine," when viewed in this light, if a reasonable jury could return a verdict for Plaintiff—the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are "facts that might affect the outcome of the suit under the governing law." *Id.* Plaintiff "may not rest upon mere allegation" in his pleadings to satisfy this requirement. *Id.* at 256; *see also Estrada*, 107 F.4th at 1262 ("To avoid summary judgment, a nonmovant must offer evidence, not bare allegations." (citing Fed. R. Civ. P. 56(c)(1)(A))). "Rather, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit [or declaration], a deposition transcript or a specific exhibit incorporated therein." *Estrada*, 107 F.4th at 1263 (internal footnote and quotation marks omitted).

"If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id.* at 1261 (quoting *Hutchinson*, 105 F.3d at 564). As applied here, once Defendants prove that Plaintiff failed to exhaust his administrative remedies, the onus falls on Plaintiff to show that the remedies were unavailable to him. *Id.* (citing *Tuckel*, 660 F.3d at 1254).

**B. Screening.**

Federal law requires this Court to screen complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss the complaint, or any portion of the complaint, if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or seeks monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010) (discussing *Iqbal* standard).

## III. Plaintiff exhausted his administrative remedies as to his 2024 Passover claims, but did not exhaust his administrative remedies as to his 2025 Passover claims.

Defendants argue Plaintiff did not exhaust his administrative remedies before filing this lawsuit. Doc. 30, at 3-7. Plaintiff responds that he received relief on one of his grievances and therefore was not required to appeal it, and that he "couldn't file a grievance about the 2025 Passover because . . . . ODOC policy does not allow grievances . . . to be filed about any issue that is in the course of litigation." Doc. 34, at 1-3. The Court should grant Defendants' motion in part.

### A. The PLRA's exhaustion requirement.

The PLRA requires a prisoner to exhaust all available administrative remedies before resorting to an action in federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to . . . give the agency a fair and full opportunity to adjudicate their claims" before a plaintiff files an action in federal court. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199,

211 (2007) (citation omitted). To exhaust administrative remedies, the plaintiff must "us[e] all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (internal quotation marks and citation omitted). "[S]ubstantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

**B. The ODOC's grievance procedure.**

The ODOC maintains a policy on prison grievances. Doc. 30, at 4-5; *see* Doc. 29, Ex. 2 (OP-090124).[5] The grievance procedure "is made available to all inmates and . . . includes at least one level of appeal." Doc. 29, Ex. 2, at 3.

To exhaust a claim under the grievance procedures, an inmate is first required to attempt informal resolution with a staff member. *See id.* at 8. If that attempt fails, the inmate can then file a request to staff "within seven

---

[5] Defendants attached a grievance policy with an effective date of January 18, 2022. Doc. 29, Ex. 2, at 3. Plaintiff does not dispute that the effective date of this policy covers his grievances.

days of the incident." *Id.* at 9. If that does not resolve the issue, the inmate can file a grievance with the appropriate reviewing authority within fifteen days from the date he receives a response to the request to staff. *Id.* at 10. An inmate can submit a final appeal to the Administrative Review Authority (ARA) within fifteen days of receiving the grievance decision. *Id.* at 15. The ODOC's grievance policy includes a section on "non-grievable issues" which includes "matters that are in the course of litigation[.]" Doc. 29, Ex. 2, at 5.

**C. Plaintiff's relevant grievance attempts.**[6]

On April 29, 2024, Plaintiff submitted a request to staff (RTS) complaining that he was receiving insufficient food during Passover and had lost weight as a result. Doc. 29, Ex. 3, at 2. Plaintiff's RTS also described the problem with receiving peanut butter and described "eat[ing] fish and cheese that is Kosher but not Kosher for Passover to make up for some of the calories[.]" *Id.* at 2-3. Plaintiff specifically wrote that the insufficient Passover menu "has caused a violation of my 1st Amendment, RLUIPA, state const[itutional] right . . . and the ORFA, and the 8th Amendment!" *Id.* at 3.

---

[6] The Special Report includes a grievance that bears no relation to the claims in Plaintiff's amended complaint. Doc. 29, Ex. 5. So, the undersigned does not discuss this grievance.

On April 30, 2024, a prison staff member responded to the RTS. *Id.* at 2. On May 14, 2024, Plaintiff submitted a grievance asking to be "fe[d] correctly during Passover." *Id.* at 4. On June 17, 2024, a prison official responded and wrote, "Relief Granted. DOC staff will ensure policy is followed." *Id.* at 6. Plaintiff did not appeal.

On April 29, 2024, Plaintiff submitted an RTS again alleging that the "2024 Passover menu has not been ful[]filled" because it included "things I couldn't eat during the 2024 Passover" and provided insufficient calories. Doc. 29, Ex. 4, at 2. A prison staff member wrote that the RTS was "[p]reviously answered on prior request." *Id.* On May 24, 2024, Plaintiff filed a grievance alleging that he received peanut butter along with "food that was not Kosher for Passover and I didn't rec[ei]ve all the food that I was supposed to get on the 2024 Passover." *Id.* at 3. Plaintiff again cited "a violation of my 1st Amendment, RLUIPA, state const[itutional] right . . . and the ORFA, and the 8th Amendment!" *Id.* at 4. On May 31, 2024, a prison official returned the grievance unanswered because Plaintiff's May 14 grievance "is currently still being processed[]" and instructed Plaintiff not to "submit any further grievances or RTS on this issue[.]" *Id.* at 6. Plaintiff did not appeal.

Plaintiff did not file any RTS or grievance relating to the 2025 Passover menu. Doc. 17, at 10; Doc. 34, at 2-3.

**D. The Court should deny Defendants' motion as to Plaintiff's 2024 Passover claims, but grant the motion as to Plaintiff's 2025 Passover claims.**

Prison officials granted relief in response to Plaintiff's May 14, 2024 grievance. Doc. 29, Ex. 3, at 6. "A prisoner is not required to appeal a favorable resolution of his grievance to exhaust administrative remedies." *Florence v. Berrios*, 212 F. App'x 722, 725 (10th Cir. 2006) (citation omitted); *see Williams v. Miller*, No. CIV-14-61-W, 2015 WL 1207011, at *4 (W.D. Okla. Mar. 12, 2015) ("That prison officials deemed the grievance process ended by their statement 'Relief Granted' excused Williams from further action."). Indeed, the ODOC's grievance policy "offers no mechanism for an appeal of a grievance that has been granted." *Williams v. Wilkinson*, 659 F. App'x 512, 520 (10th Cir. 2016); *cf. Reed v. Bryant*, No. CIV-16-461-C, 2019 WL 3939068, at *9 n.6 (W.D. Okla. June 4, 2019) ("Once Plaintiff was placed back on the kosher diet and his appeal was deemed moot, there were no further administrative remedies for him to pursue[.]"), *report and recommendation adopted*, 2019 WL 3937636 (W.D. Okla. Aug. 20, 2019). To the extent that Defendants argue that "Plaintiff failed to exhaust administrative remedies on any claim that he was denied

specific Passover foods[,]" Doc. 30, at 7, Plaintiff's grievance sufficiently "fulfilled the information-providing purpose of the exhaustion requirement." *Williams*, 659 F. App'x at 519.

However, Plaintiff made no attempt to start the grievance process as to his 2025 Passover claims and has not demonstrated any reason to excuse exhaustion. Plaintiff's April 29, 2024 RTS and May 14, 2024 grievance expressly referenced his pending lawsuit "over the 2023 Passover meals" but prison officials did not reject the RTS or grievance on that basis. Doc. 29, Ex. 3, at 2, 4, 6. Accordingly, the Court should conclude that Plaintiff was required to commence the grievance procedure as to his 2025 Passover claims and should dismiss those claims where he failed to make any attempt to do so. *Cf. McMiller v. Corr. Corp. of Am.*, No. CIV-14-161-W, 2015 WL 1010508, at *5 (W.D. Okla. Mar. 6, 2015) ("[T]he Court does not find that in returning this grievance because in her opinion it contained more than one issue, Kusch prevented McMiller from complying [with] the DOC's Offender Grievance Process."); *Duvall v. Troutt*, No. CIV-14-29-F, 2014 WL 5780725, at *5 (W.D. Okla. Sept. 15, 2014) ("Plaintiff was no doubt aware that he did *not* have litigation pending regarding Defendant Troutt's actions on December 14, 2012. Yet, for some reason he made no effort to resubmit the request to correct this

inaccuracy, or to file a grievance asserting that he did not receive a response to the Request to Staff." (emphasis in original)), *report and recommendation adopted*, 2014 WL 5780737 (W.D. Okla. Nov. 5, 2014).

In sum, the Court should conclude that Plaintiff exhausted his available administrative remedies regarding his 2024 Passover claims, where prison officials granted relief in response to his grievance. But the Court should dismiss Plaintiff's 2025 Passover claims as unexhausted because Plaintiff was required to commence the administrative remedy process but did not make any attempt to do so.

## IV. Plaintiff has failed to state a First Amendment violation regarding the 2024 Passover menu.[7]

Next, Defendants argue that "Plaintiff fails to allege that any Defendant personally engaged in any denial of Plaintiff's ability to practice his religion[]" or that "any Defendant was aware and denied [Plaintiff's] religious accommodation." Doc. 30, at 10-12. Allegations of "personal participation in the specific constitutional violation complained of [are] essential" in a § 1983 action. *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *see also Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). Accordingly, a plaintiff seeking relief under § 1983 must allege

[7] As noted *supra*, Plaintiff's grievances asserted violations of the First and Eighth Amendments and RLUIPA in addition to state law. Doc. 29, Ex. 3, at 3; *id*. Ex. 4, at 4. By contrast, Plaintiff's amended complaint names all defendants in their individual capacities, seeks monetary damages, and cites only violations of the First Amendment and state law. Doc. 17, at 2, 7-8, 10-11. So the undersigned does not construe Plaintiff's complaint as asserting any claim under RLUIPA. *Cf. Sossamon v. Texas*, 563 U.S. 277, 280 (2011) (states do not "waive their sovereign immunity to suits for money damages under" RLUIPA); *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) ("there is no cause of action under RLUIPA for individual-capacity claims."). Plaintiff also does not allege that he has been subjected to a deprivation that is "sufficiently serious" to constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). So the undersigned does not construe Plaintiff's complaint as asserting any Eighth Amendment claim.

specific facts that make clear "who did what to whom." *Clay v. Lares*, No. 23-1151, 2024 WL 79966, at *1 (10th Cir. Jan. 8, 2024) (affirming dismissal of complaint on screening when the plaintiff failed to "make clear each defendant's personal participation in any alleged constitutional violation by alleging who did what to whom").

As for Defendants Harpe and Brown, Plaintiff alleges that these defendants "tasked . . . Parker to correct the 2024 Passover" menu, that "they must sign off on all relig[i]ous diet changes with their approval at the Agency meetings[,]" and they "failed to insure that . . . Parker followed ODOC policy . . . [regarding] Kosher and Halal food preparation[.]" Doc. 17, at 7. Plaintiff also relies on information a LARC food service supervisor "sent . . . to the ODOC headquarters . . . on 4-27-23" and a lawsuit he filed naming Chaplain Brown as a defendant. *Id.* at 5-6; *see* Doc. 17, Ex. 3. These allegations do not rise to the level of personal involvement necessary to state a § 1983 claim. *See, e.g.*, *Williams v. Wilkinson*, 645 F. App'x 692, 706 (10th Cir. 2016) ("Mr. Williams therefore argues Director Jones was ultimately responsible for the policy ending communal-religious services for maximum-security Muslim inmates and the policy excluding Muslims from the list approved to request a kosher diet. He further contends that this single allegation standing alone is

enough to state a claim under Rule 12(b)(6) for § 1983 supervisor liability. We disagree. Even liberally construing Mr. Williams's pro se Complaint, it fails to state a claim." (internal citation omitted)); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("Gallagher's only allegation involving these defendants relates to their denials of his grievances, namely that they 'rubber-stamped' his various grievances . . . . Because Gallagher's only allegations involving these defendants relate to the denial of his grievances, he has not adequately alleged any factual basis to support an 'affirmative link' between these defendants and any alleged constitutional violation."); *Toahty v. Whetsel*, No. CIV-16-1050-C, 2017 WL 1493110, at *4 (W.D. Okla. Mar. 28, 2017) ("Mr. Toahty's allegations based on Defendant Whetsel's responsibility for rules are nothing more than formulaic recitation of the elements of a violation of federally protected rights and stop short of the line between possibility and plausibility of entitlement to relief." (internal quotations, alterations, and citation omitted)), *report and recommendation adopted*, 2017 WL 1483553 (W.D. Okla. Apr. 25, 2017). So the Court should dismiss Plaintiff's § 1983 claims against Defendants Harpe and Brown.

Plaintiff makes no allegations that Defendant Scoggins was involved in the 2024 Passover menu, and his claims relating to the 2025 Passover menu

should be dismissed for failure to exhaust administrative remedies. So the Court should dismiss Defendant Scoggins from the action.

As for Defendant Parker, assuming without deciding that Plaintiff has adequately alleged her personal involvement in creating and approving the 2024 Passover menu, Doc. 17, at 6; *see* Doc. 17, Ex. 2, Plaintiff must also allege that Parker acted with a "discriminatory purpose[]" in order to state a violation of his First Amendment rights.[8] *Ralston v. Cannon*, No. 19-1146, 2021 WL 3478634, at *6 (10th Cir. Aug. 9, 2021) (explaining that, after *Iqbal*, a previous panel of the court had "concluded that it was doubtful in our circuit whether having anything short of a discriminatory purpose would be sufficient to expose a defendant to § 1983 liability for a First Amendment free-exercise violation"); *see also Carr v. Zwally*, 760 F. App'x 550, 554 (10th Cir. 2019) ("[T]o plausibly state a claim of religious discrimination, [plaintiff] 'must plead sufficient

---

8 Defendants did not make any argument concerning the requirement that Plaintiff allege discriminatory intent. Because Plaintiff is a prisoner and his lawsuit is an "action brought with respect to prison conditions under . . . [f]ederal law," the Court has an obligation to dismiss any portion of Plaintiff's complaint that "is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(1); *accord* 28 U.S.C. § 1915A(b); *see Savage v. Troutt*, 780 F. App'x 574, 576-78 (10th Cir. 2019) (affirming sua sponte dismissal of a claim not addressed in the defendants' motion to dismiss pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c)(1) for failure to state a claim).

factual matter to show that' [defendant] took his Bibles and religious materials 'not for a neutral . . . reason but for the purpose of discriminating on account of . . . religion.'" (quoting *Iqbal*, 556 U.S. at 677)). Plaintiff has not made any allegations concerning Parker's intent in creating the 2024 Passover menu. *Cf.* Doc. 17, at 7 (vaguely alleging that Defendants Harpe and Brown "discriminate against Plaintiff's religion of Judaism because they only promote Christianity"). So Plaintiff has failed to state a § 1983 claim against Parker.

**V. The Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.**

Without any surviving § 1983 claim, the Court must decide whether to continue to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state-law claims. Having determined the Court should dismiss Plaintiff's federal claims, the undersigned recommends the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3) (permitting district courts to decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction"); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

## VI. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends that the Court treat Defendants' motion as a motion for summary judgment and grant the motion as to Plaintiff's 2025 federal claims, dismissing those claims without prejudice for lack of exhaustion. The undersigned further recommends that the Court dismiss Plaintiff's 2024 First Amendment claims without prejudice for failure to state a claim and decline to exercise supplemental jurisdiction over the remaining state-law claims.

The undersigned advises Plaintiff of his right to file an objection to this Report and Recommendation with the Clerk of this Court on or before November 9, 2026, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises Plaintiff that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 19th day of October, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE